UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CARLIS STEPHENS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:09CV02131 AGF |
| ARCTIC CAT INC., | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

In his Second Amended Complaint, Plaintiff alleges violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*, and the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020. Currently before the Court is Defendant Arctic Cat, Inc.'s motion to strike the request for punitive damages under the MMWA and to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), Count II of Plaintiff Carlis Stephens' Second Amended Complaint under the MMPA. For the reasons set forth below, the Court will grant Defendant's motion to strike and deny Defendant's motion to dismiss Count II.

**BACKGROUND**

On March 14, 2011, this Court granted (Doc. No. 32) Defendant's motion to strike the prayer for punitive damages in Count I of Plaintiff's First Amended Complaint and dismissed Plaintiff's MMPA claim without prejudice to refiling an amended complaint in compliance with the requirements of Federal Rule of Civil Procedure 9(b). The Court held "that Plaintiff has failed to specify when the alleged conduct took place," and that it

was "unable, from Plaintiff's pleading, to determine the timing, circumstances and actors" related to Plaintiff's allegations under the MMPA. On April 1, 2011, Plaintiff filed a Second Amended Complaint (Doc. No. 33), asserting in Count I, a claim under the MMWA, and in Count II, an MMPA claim.

The factual allegations set forth in Plaintiff's Second Amended Complaint are as follows. On November 16, 2005, Plaintiff purchased a 2005 Arctic Cat 500 4XA All Terrain Vehicle (hereinafter referred to as the "ATV") from Boat & ATV World in Collinsville, Mississippi. Plaintiff alleges that the ATV was purchased for recreational hunting, fishing, and fur trapping. When he purchased the ATV, Plaintiff also purchased upgraded tires offered by Defendant as accessories for the vehicle. Boat & ATV World provided Plaintiff with a written six-month warranty, and an 18-month Arctic Cat, Cat Care U.S.A. Extended Warranty on the ATV. Plaintiff alleges that both warranties covered the ATV's frame, in addition to most other features.

Over the next sixteen months, Plaintiff experienced numerous difficulties with the ATV. In the complaint, he sets forth the nature of each difficulty or malfunction, the dates on which each was repaired, the names and locations of the dealerships that performed the repairs, the names of the individuals with whom he spoke concerning the repairs, and statements made to him regarding the repairs, and the warranty and use of the ATV.

On March 8, 2007, approximately sixteen months after he purchased the ATV, Plaintiff noticed that it needed new bushings and that the wheel bearings were getting dry. Plaintiff also noticed that the ATV had developed cracks in the frame beneath the

seat. Plaintiff took the ATV to Pro Dirt Cycles in Wentzville, Missouri, for repairs. Pro Dirt fixed the bushing and wheel bearings under warranty, but stated it was not qualified to fix the cracks in the frame.

During a visit to New Mexico, on or about January 13 or 14, 2008, Plaintiff called one of Defendant's dealers, Desert Green, to again complain about the cracked frame. Plaintiff told "Mike," a representative of Desert Green, that he intended to weld the frame so he could continue using the ATV. Desert Green then called Defendant and was instructed by Defendant to take photographs of the ATV before Plaintiff welded the frame. Neither Defendant nor Desert Green advised Plaintiff not to weld the frame. Shortly after Desert Green took photographs of the ATV, including photographs of the frame, Plaintiff welded the frame himself.

On January 20, 2008, Plaintiff received a call from Defendant's representative, "Travis." Plaintiff told Travis he wanted Defendant to replace the ATV. Travis stated that Plaintiff had voided the warranty by using tires that were "too aggressive" for the ATV. Plaintiff advised Travis that Defendant itself advertised these particular tires as being compatible with the ATV, and specifically held out these tires as being accessories. Travis said he would get back to Plaintiff, but Travis did not contact Plaintiff again.

Between January 2008 and April 2008, Plaintiff made more than 20 telephone calls to Defendant's warranty department. These phone calls were never returned. Plaintiff threatened to file a lawsuit and was transferred to "Judy" in Defendant's legal department. Plaintiff told Judy he wanted Defendant to pay for a replacement frame or a

new ATV.  Judy told Plaintiff that because he modified the ATV by welding it, the warranty had been voided.

On April 10, 2008, Plaintiff had the frame analyzed by St. Louis Testing Laboratories in St. Louis, Missouri.  Based on the results of this analysis, Plaintiff learned the tensile strength of the steel used in the frame was too low, which made the frame unduly flexible and susceptible to cracking.  Within the following week, Plaintiff called Defendant's warranty department and told Defendant's representative about the findings by St. Louis Testing Laboratories.  Defendant's representative denied there was anything wrong with the frame.  Plaintiff then conducted an on-line investigation and learned that in or around the summer of 2006, Defendant had re-designed the ATV frame.  At no time did Defendant or its representatives advise Plaintiff about the stronger frame.

On or about June 6, 2008, Plaintiff obtained one of the newly designed frames from Brannans Marine & Motorsports, an authorized Arctic Cat dealer, located in Fenton, Missouri.  At Plaintiff's request, Briem Engineering in St. Louis, Missouri, comparison-tested the new frame against the original frame.  Based on the results of this comparison test, Plaintiff learned the re-designed frame was stronger and less likely to develop cracks than the original frame.  On or about the same date, Plaintiff paid Brannans to replace the cracked frame.  Plaintiff mentioned to Brannans that Defendant had designed a stronger frame, and assumed Brannans would order the newer frame from Defendant.  However, Brannans installed the same frame that was originally on the vehicle.

On November 26, 2008, the second frame cracked.  Plaintiff called Brannans and asked if the second frame was covered by warranty.  Brannans told Plaintiff it had to

contact Defendant to find out whether or not the second frame was covered by warranty. On December 9, 2008, Brannans advised Plaintiff that Defendant would not cover the second frame under its warranty because Plaintiff had overloaded the vehicle. Plaintiff stopped driving the vehicle altogether on December 19, 2008.

## DISCUSSION

### MOTION TO STRIKE

In its order of March 14, 2011, the Court ruled that the prayer for punitive damages in Plaintiff's claim under the MMWA should be stricken because punitive damages are not available under the MMWA. Plaintiff now concedes that he inadvertently neglected to remove the prayer for punitive damages from Count I of the Second Amended Complaint and that this request for punitive damages should be stricken. Accordingly, Defendant's motion to strike will be granted.

### MOTION TO DISMISS

Defendant also moves to dismiss Plaintiff's MMPA claim under Rule 12(b)(6) on the grounds that it fails to allege the required elements of a claim under the MMPA and to satisfy the heightened pleading requirements of Rule 9(b). Specifically, Defendant asserts that Plaintiff has not cured the deficiencies noted in the Court's Order of March 14, 2011, and still fails to plead with sufficient specificity the timing, circumstances, actors, and representations or omissions giving rise to the alleged violation of the MMPA.

To survive a 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," but the allegations must nonetheless "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff need only allege facts that permit the reasonable inference that the defendant is liable, even if the complaint "strikes a savvy judge that actual proof of the facts alleged is improbable" and recovery "very remote and unlikely." *Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir. 2010). This, however, requires more than mere "labels and conclusions," and the complaint must state a claim that is "plausible on its face." *Twombly*, at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The task of a court is "to review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (noting that "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.").

As the Court previously ruled, claims under the MMPA are subject to the heightened pleading requirements of Rule 9(b) which requires that circumstances constituting fraud be pleaded with particularity. *See, e.g., Blake, et al. v. Career Educ. Corp.*, No. 4:08CV00821 ERW, 2009 WL 140742, *1 (E.D. Mo. Jan. 20, 2009); *Lavender v. Wolpoff & Abramson, L.L.P.*, No. 07-0015-CV-W-FJG, 2007 WL 2507752, at *2 (W.D. Mo. Aug. 30, 2007). In order to satisfy Rule 9(b) the complaint must allege "'such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (quoting

*Schaller Tel. Co. v. Golden Sky Sys., Inc*., 298 F.3d 736, 746 (8th Cir.2002). In other words, the complaint must plead the "who, what, where, when, and how" of the alleged fraud. *United States ex rel. Joshi v. St. Luke's Hosp., Inc.,* 441 F.3d 552, 556 (8th Cir. 2006) (citations omitted). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Schaller Tel. Co.*, 298 F.3d at 746 (quoting *Commercial Prop. v. Quality Inns Int'l, Inc*., 61 F.3d 639, 644 (8th Cir.1995)). The Eighth Circuit has held that Rule 9(b) does not require a complaint to include highly specific allegations with respect to facts that would be known to the defendants, but not to the plaintiffs, before the plaintiffs have had some opportunity to conduct discovery. *Drobnak*, 561 F.3d at 784.

To state a claim for violation of the MMPA, a plaintiff must allege that he (1) leased or purchased a product or service sold or advertised by defendants; (2) primarily for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful by § 407.020. Mo. Rev. Stat. § 407.025; *Chochorowski v. Home Depot U.S.A., Inc.*, 295 S.W.3d 194, 197–98 (Mo. Ct. App. 2009). The first three factors are not in dispute in Defendant's motion. As to the fourth element, Plaintiff must allege that Defendant "used or employed a deception, fraud, false pretense, false promise, misrepresentation, unfair practice, concealment, suppression, or omission in connection with the purchase of the product or service at issue." *Scanio v. Zale Delaware, Inc.*, No. 4:12CV37CDP, 2012 WL 368741, at *2 (E.D. Mo. Feb. 3, 2012).

Defendant asserts that the MMPA requires a connection to the sale, advertisement, or purchase of the vehicle and that Plaintiff fails to plead such a connection because the alleged "unlawful acts" set forth in ¶¶ 43(a)-(d) of the Second Amended Complaint occurred after the Plaintiff purchased the ATV. This argument is without merit. The MMPA provides that "[a]ny act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation." Mo. Rev. Stat. § 407.020.1. Therefore, the fact that the alleged "unlawful acts" occurred after the sale or purchase will not serve to bar Plaintiff's MMPA claim. *See Schuchmann v. Air Services Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 232 (Mo. Ct. App. 2006) (holding that refusal of seller of air conditioning unit to honor lifetime warranty can be actionable "unfair practice" under the MMPA). Under the MMPA a plaintiff need not prove that he relied on the acts or omissions complained of or that they induced the sale or purchase. *Id.*

With respect to the required particularity of the allegations, the Court finds that Plaintiff has cured the defects identified in the previous complaint and provided specific information regarding the timing and circumstances of the alleged violation of the MMPA. Plaintiff identifies specific dates, places, dealerships, and individuals (albeit only by first name) and has pled the content of the statements and omissions that form the gravamen of his MMPA claim. *Joshi*, 441 F.3d at 556; *Ash Grove Cement Co. v. MMR Constructors, Inc.*, No. 10CV4069, 2011 WL 398860 at *1 (W.D. Ark. Feb. 3, 2011) (holding that including the time, place, and contents of statements, even without the names of the specific individuals responsible for the fraud, satisfies the requirements of

8

Rule 9(b)). The surnames of the employees involved can be ascertained through discovery. *See Scanio*, 2012 WL 368741, at *3. Count II therefore states a claim under the MMPA sufficient to survive a Rule 12(b)(6) motion to dismiss, and is pled with sufficient particularity to satisfy the requirements of Rule 9.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Arctic Cat, Inc.'s Motion to Strike and to Dismiss (Doc. No. 34) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that the prayer for punitive damages in Count I of the Second Amended Complaint is stricken.

**IT IS FURTHER ORDERED** that Defendant Arctic Cat, Inc.'s motion to dismiss Count II of Plaintiff's Second Amended Complaint is **DENIED**.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of February, 2012.